JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Samuel Lowe appeals from his guilty plea to aggravated murder. For the reasons set forth below, we affirm.
 {¶ 2} On June 23, 2005, defendant was indicted in connection with the shooting death of his estranged wife. Count One charged him with aggravated murder, with repeat violent offender specification, notice of prior conviction and firearm specifications. Count Two charged him with having a weapon under disability. On November 29, 2005, defendant pled guilty to Count One and Count Two was dismissed. The trial court subsequently sentenced him to a term of life imprisonment without parole plus three years for the gun specification. Defendant *Page 2 
now appeals and assigns four errors for our review.
 {¶ 3} Defendant's first assignment of error states:
 {¶ 4} "Where a defendant requests to withdraw a guilty plea prior to sentencing, there is a presumption for allowing the withdrawal. Unless the state can show prejudice, the judge abuses her discretion by refusing to allow the withdrawal."
 {¶ 5} Crim.R. 32.1 governs motions to withdraw guilty pleas and states in pertinent part, as follows:
 {¶ 6} "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed * * *."
 {¶ 7} "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted. Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing." State v. Xie (1992), 62 Ohio St.3d 521, 527,584 N.E.2d 715. We review presentence motions to withdraw guilty pleas for an abuse of discretion. Id.
 {¶ 8} In ruling on a presentence motion to withdraw a guilty plea, "the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Id.
 {¶ 9} A trial court should consider, inter alia, the following factors in considering a presentence motion to withdraw a guilty plea: (1) whether the accused is represented by highly competent counsel; (2) whether the accused was given a *Page 3 
full Crim.R. 11 hearing before entering the plea; (3) whether a full hearing was held on the motion; (4) whether the trial court gave full and fair consideration to the motion; (5) whether the motion was made within a reasonable time; (6) whether the motion sets out specific reasons for the withdrawal; (7) whether the accused understood the nature of the charges and possible penalties; and (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges. State v. Fish (1995), 104 Ohio App.3d 236, 239,661 N.E.2d 788, citing State v. Peterseim, 68 Ohio App.2d 211, 213-214,428 N.E.2d 863, State v. Mathis (May 30, 1990), Hamilton App. C-890286, andState v. Cloud (1993), 91 Ohio App.3d 366, 632 N.E.2d 932.
 {¶ 10} In the instant case, the court held a full hearing pursuant to Crim.R. 11 before accepting the guilty plea and notified defendant of his Constitutional rights and other rights. At this hearing, the nature of the charges and possible penalties were repeatedly explained to defendant. The court then determined that the plea was knowingly, intelligently and voluntarily made. The record further indicates that the court held a hearing on defendant's motion to withdraw his plea on January 12, 2006. The record indicates that defendant's attorneys have extensive experience, diligently pursued the sanity issue and a possible alibi, and diligently worked for an agreed sentence of twenty-three years to life.
 {¶ 11} The record also indicates that the trial court gave full and fair *Page 4 
consideration to the motion. The motion was made three days before sentencing and did not set forth specific grounds or reasons for the withdrawal of the plea. At the hearing, defendant offered nothing more than his belief that he was being railroaded and that he wanted better counsel.
 {¶ 12} The trial court noted that defendant had fabricated an earlier claim of loss of memory, and that defendant's attorneys had pursued numerous avenues in pursuit of possibly refuting the charges, establishing a defense to the charges, or reducing the penalty. Ultimately, the court determined that defendant was engaging in gamesmanship and it denied the motion.
 {¶ 13} In accordance with all of the foregoing, we conclude that the trial court acted within its discretion in denying the motion. This assignment of error is therefore without merit.
 {¶ 14} Defendant's second assignment of error states:
 {¶ 15} "The advisement to a criminal defendant to accept a life without parole sentence where a viable issue was available and a conviction to the indictment would result in the same sentence violates a denial [of the right to effective] assistance of counsel."
 {¶ 16} In order to establish a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. *Page 5 Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674,104 S.Ct. 2052. This requires showing: (1) that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense.
 {¶ 17} Our scrutiny of counsel's performance must be highly deferential, as there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694.
 {¶ 18} Counsel's advice to his client to enter into a plea in order to forestall any further prosecutions based upon the client's same activities is an appropriate defense strategy. State v. Rodeback, Cuyahoga App. No. 80151, 2002-Ohio-2739, citing State v. Brahler (Dec. 12, 2000), Cuyahoga App. No. 76941.
 {¶ 19} The record in this instance indicates that the state would not dismiss or reduce the most serious charge of aggravated murder, but the defendant's attorneys sought and obtained from the state an agreement to dismiss the weapons under disability charge and also obtained a stipulation that defendant would receive the minimum sentence of life with parole eligibility after serving twenty years, plus three years for the gun specification. (Tr. 8, 15). The potential penalties, including the possibility of life without parole eligibility, were thoroughly explained on the record. (Tr. 8-9, 14-15, 20-21). Defendant then rejected the proposed plea agreement. (Tr. *Page 6 
8). Thereafter, the state indicated that it would not agree to a specific sentence but rather would leave the sentence to the discretion of the trial court. (Tr. 14-15).
 {¶ 20} The record further indicates that defendant made inculpatory statements and that a psychiatrist from the court's clinic and an expert retained by the defense determined that defendant was sane at the time of the offenses.
 {¶ 21} After speaking with his brother, defendant entered into a guilty plea to aggravated murder and the charge of having a weapon under disability was dismissed. He was ultimately sentenced to life without the possibility of parole, but we cannot say that defense counsel was ineffective, as he pursued various defense strategies and secured a stipulation that defendant would receive a sentence of twenty-three years to life, pursuant to an agreement that defendant later rejected.
 {¶ 22} At the plea hearing, the trial court carefully reviewed with defendant the minimum and maximum possible sentences, the rights he was waiving by pleading guilty, and the provisions of the parties' plea agreement. Defendant clearly understood his maximum possible sentence and the record establishes that defendant had a full understanding of the direct consequences such that his plea represents a voluntary and intelligent choice among the alternatives. See North Carolina v.Alford (1970), 400 U.S. 25, 31, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). In short, there is no indication that counsel performed deficiently or prejudiced the defense. *Page 7 
 {¶ 23} This claim is therefore without merit.
 {¶ 24} Defendant's third assignment of error states:
 {¶ 25} "In a sentencing hearing for Aggravated Murder pursuant to R.C.2903.01, where a defendant is facing the possibility of life without parole, a trial court abuses its discretion by not allowing the defense to call any witnesses to provide mitigation."
 {¶ 26} R.C. 2929.19(A)(1) requires a trial court to hold a sentencing hearing during which it must allow an offender to "present information relevant to the imposition of sentence in the case." Likewise, Crim.R. 32(A) states that, at the time of imposing sentence, the trial court must "address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." These provisions allow for the right of "allocution," but do not mention allowing a defendant to swear in witnesses to present evidence. State v. Murray, Pickaway App. No. 04CA30, 2005-Ohio-2225. See, also, State v. Lowe (May 3, 2001), Cuyahoga App. No. 78021 (trial court did not err in refusing to allow appellant's wife an opportunity to address the court in mitigation).
 {¶ 27} This claim is therefore without merit.
 {¶ 28} Defendant's fourth assignment of error states:
 {¶ 29} "R.C. [2929.11(B)] requires a sentencing court to find the resultant *Page 8 
sentence to be proportional to all other similarly convicted offenders."
 {¶ 30} R.C. 2929.11(B) provides as follows:
 {¶ 31} "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 32} The goal of felony sentencing pursuant to R.C. 2929.11(B) is to achieve "consistency" not "uniformity." State v. Klepatzki, Cuyahoga App. No. 81676, 2003-Ohio-1529. Moreover, in State v. Hunt, Cuyahoga App. No. 81305, 2003-Ohio-175, this court held that "R.C. 2929.11(B) does not require the trial court to engage in an analysis on the record to determine whether defendants who have committed similar crimes have received similar punishments." The court is not required to make express findings that the sentence is consistent with other similarly situated offenders. State v. Richards, Cuyahoga App. No. 83696, 2004-Ohio-4633;State v. Harris, Cuyahoga App. No. 83288, 2004-Ohio-2854. Rather, the statute indicates the trial court's comments made at the hearing should reflect the court considered that aspect of the statutory purpose in fashioning the appropriate sentence. State v. Edmonson,86 Ohio St.3d 324 at 326-327, 1999-Ohio-110, 715 N.E.2d 131; State v. Hunt, supra. *Page 9 
 {¶ 33} Similarly, in State v. Quine, Summit App. No. 20968, 2002-Ohio-6987, the Ninth District Court of Appeals explained:
 {¶ 34} "We also believe that it is not the trial court's responsibility to research prior sentences from undefined, and largely unavailable, databases before reaching its sentencing decision. The legislature did not intend to place such a burden on the trial court when it enacted R.C. 2929.11(B). The legislature's purpose for inserting the consistency language contained in R.C. 2929.11(B) was to make consistency rather than uniformity the aim of the sentencing structure. See Griffin Katz, Ohio Felony Sentencing Law (2001), 59. "Uniformity is produced by a sentencing grid, where all persons convicted of the same offense with the same number of prior convictions receive identical sentences." Id. Consistency, on the other hand, requires a trial court to weigh the same factors for each defendant, which will ultimately result in an outcome that is rational and predictable. Id.
 {¶ 35} "* * *
 {¶ 36} "While we reject Appellant's position that the trial court is required to sua sponte research other cases and to weigh such information on the record at sentencing, we do not hold that if provided with sufficiently reliable information by counsel for the defendant and/or the state that the trial court could not, in its discretion, properly consider such information when making its decision. * * * We do, however, reject Appellant's proposition that the trial court must consider such *Page 10 
information and document its analysis on the record at sentencing. In any event, since the record is silent on whether or not Appellant provided the trial court with such information, there is no plain error on such grounds."
 {¶ 37} In this matter, defendant's trial attorneys provided the court with a sentencing memorandum containing a list of cases in which the defendants had received sentences in the range of twenty to twenty-three years for various homicides. The prosecuting attorney noted that these cases were decided prior to the changes in sentencing for aggravated murder. The court considered the statutory purposes of protecting the public from future crime by the offender and punishing the offender, and absolutely nothing has been offered from which we may conclude that the sentence is disproportionate to the sentences imposed in other matters. Cf. State v. Sargent (1997), 126 Ohio App.3d 557, 710 N.E.2d 1170. We therefore reject this assignment of error.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 11 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, P.J., and MELODY J. STEWART, J., CONCUR *Page 1